### Kelley Trust Company v. Lundell Land & Lumber Company.

### Opinion delivered May 28, 1923.

1. JUDGMENT—AMENDMENT NUNC PRO TUNC.—Where a judgment or decree has been actually rendered but not entered on the record in consequence of an accident or mistake, or the neglect of the clerk, the court has power at a subsequent term to order that the judgment or decree be entered of record *nunc pro tunc*, provided the fact of its rendition is satisfactorily established.

2. JUDGMENT—AMENDMENT—OMISSION.—Where anything has been omitted from a decree which is necessarily or properly a part of it, but failed to be incorporated in it through the negligence or inadvertence of the court or clerk, the omission may be supplied by an amendment after term.

3. JUDGMENT—AMENDMENT—CORRECTION OF ERRORS.—While the court may amend its judgment or decree after term to speak the truth, it has no power to correct its mistakes or errors or to make the judgment or decree speak what should have been done but was not done.

4. LIMITATION OF ACTIONS—PAYMENT OF TAXES.—Title to wild and unimproved land was not acquired by payment of the taxes thereon for seven consecutive years under color of title, under Crawford & Moses' Dig., § 6943, where during some of those years the land was exempt from taxation as the property of a certain levee district under Acts 1893, p. 308.

Appeal from Phillips Chancery Court; *A. L. Hutchins,* Chancellor; affirmed.

STATEMENT OF FACTS.

On the 14th day of April, 1920, the Kelley Trust Company brought suit against Lundell Land & Lumber

Company to recover eighty acres of land in Phillips County, Ark. Both parties claim title to the land by mesne conveyances from purchasers at overdue tax sales. The plaintiff also claims title on account of having paid the taxes more than seven years in succession, three of which were subsequent to the statute passed by the General Assembly on March 18, 1899, which is § 6943 of Crawford & Moses' Digest.

It appears from the record that the eighty acres of land in question was forfeited to the State for the non-payment of taxes for the year 1876. On Sept. 30, 1882, this tract of land was included in a suit brought by the State of Arkansas under and by virtue of the overdue tax act of 1881.

A decree was rendered in the chancery court in said cause on the 27th day of November, 1882, which was a day of the November term of the chancery court of Phillips County, Ark. It was decreed that the forfeiture and sale of said land to the State of Arkansas was void, and that no title was vested in the State by virtue of said sale. It was further decreed that a commissioner be appointed for the purpose of selling certain lands, including the tract in controversy, for the nonpayment of the taxes charged against said lands. Said tract of land was duly struck off and sold to the State of Arkansas for want of a private bidder. The title to the land in controversy passed to the State in this overdue tax sale and remained in the State until the passage of act 176, approved April 14, 1893. This act donated the land in controversy to the Laconia Levee District for the purpose of building and maintaining levees in said district. Acts of 1893, p. 308.

On the 15th day of June, 1901, a final decree was rendered in the Phillips Chancery Court, in a suit brought by the Laconia Levee District to quiet and confirm the title to certain lands, including the land in controversy, and the title to the land in controversy was vested in the predecessors in title of the Lundell Land & Lumber Company.

On the 18th day of June, 1883, being a day of the May term, 1883, of the chancery court of Phillips County, Ark., what purports to be a decree *nunc pro tunc* was entered of record in the overdue tax suit above referred to, and the lands embraced in that suit, including the land in controversy, were again ordered sold by a commissioner appointed for that purpose. At the sale the land was duly purchased by the predecessors in title of the Kelley Trust Company.

It was stipulated that the land in question is wild and unimproved, and is not in the actual possession of any one. The plaintiff and its predecessors in title paid the taxes on the land in question for more than seven years consecutively, and three of such payments were made subsequent to the passage of the act of March 18, 1899, which is § 6943 of Crawford & Moses' Digest.

The chancery court found the issues in favor of the defendant, and a decree was entered accordingly. To reverse that decree the plaintiff has duly prosecuted this appeal.

*Ozero C. Brewer* and *John C. Sheffield,* for appellant.

Title was acquired by appellant through the sale under the *nunc pro tunc* order. Said order was valid, no fraud being shown. Title by limitation; also by payment of taxes for 7 years under color of title. 1 Burris' Law Dictionary, Rawles, 527; § 6943, C. & M. Digest; 121 Ark. 33. Appellee is also estopped to claim title to the lands.

*John I. Moore, Sr., J. G. Burke* and *John I. Moore, Jr.,* for appellee.

Appellee claims ownership of the lands through two chains of title, one of which is not controverted in appellant's brief, but only its claim through the sale in the overdue tax proceeding. The only question for determination is whether appellant or appellee and their predecessors in title acquired the lands by purchase under the overdue tax proceedings. Appellant claims

the title passed under sale to West and Ark.-Miss. Timber Land Association, while appellee holds that the title passed under the original final decree rendered in said suit to the State of Arkansas. The order confirming the sale under the final decree is conclusive, and appellant and its grantors cannot question validity of the sale. 97 Ark. 76. The *nunc pro tunc* decree was void, and no title passed by sale thereunder. 51 Ark. 224; 129 Ark. 301; 143 Ark. 543. Final decree was rendered Nov. 27, 1882, and the *nunc pro tunc* order June 18, 1883. Court had no power to vacate a judgment after lapse of the term. 148 Ark. 325; 144 Ark. 301; 97 Ark. 314; 113 Ark. 237; 46 Ark. 552; 33 Ark. 105; 36 Ark. 513; 52 Ark. 316. The title rested under the first sale, and the attempted sale under the *nunc pro tunc* order was void. Appellant could not acquire title by limitation under 7 years statute of paying taxes under color of title; no taxes were due while lands held by State, and they were exempt from taxation while held by Laconia Levee District, and he did not pay the taxes for 7 years in succession, under provisions of § 6943, C. & M. Digest. 56 Ark. 276; 66 Ark. 539; 75 Ark. 146. Appellant cannot raise question of estoppel for first time here.

HART, J., (after stating the facts). The plaintiff and the defendant both claim title at a sale under a decree in the overdue tax proceeding. The defendant deraigns title under the original decree rendered at the November term, 1882, of the Phillips Chancery Court, and the plaintiff deraigns title under what purports to be a decree *nunc pro tunc* rendered in the overdue tax case at the May term, 1883.

It is well settled that, in any case where a judgment or a decree has been actually rendered but not entered on the record, in consequence of an accident or mistake, or the neglect of the clerk, the court has power at a subsequent term to order that the judgment or decree be en-

tered of record *nunc pro tunc,* provided the fact of its rendition is satisfactorily established.

If anything has been omitted from the decree which is necessarily or properly a part of it, but failed to be incorporated in it through the negligence or inadvertence of the court or the clerk, then the omission may be supplied by an amendment after the term.

If, on the other hand, the amendment is for the purpose of changing the judgment actually rendered to one which was not rendered, this cannot be done. The power to amend the judgment as entered cannot be used for the purpose of correcting errors or omissions of the court. Such procedure cannot be allowed so as to enable the court to review or reverse its action in respect to what it has already done. Such amendment would not speak the truth, but would speak what should have been done and was not done. *Gregory* v. *Bartlett,* 55 Ark. 30; *St. L. & N. Ark. Rd. Co.* v. *Bratton,* 93 Ark. 234, and *Sloan* v. *Williams,* 118 Ark. 593.

In the case at bar the record shows that the decree rendered at the November term, 1882, in the overdue tax case, was in every respect a complete decree. A sale was had under it, and the predecessors in title of the defendant became the purchasers at the sale. It is not clearly shown what the purpose of the decree rendered at the May term, 1883, of the court in the overdue tax sale was, but it is in no sense a *nunc pro tunc* decree, for, as we have already seen, the former decree was in all respects as complete a decree as the one purporting to be a decree *nunc pro tunc.* Each decree is very lengthy, and we do not deem it necessary to set either one out *in extenso.* It is sufficient to say that each is a complete decree and covers everything that is essential to be set out in an overdue tax decree. Hence, under the authorities cited above, and many others which might be cited, the chancery court could not correct its original decree by *nunc pro tunc* decree after the term at which the first decree had been entered of record had

lapsed.   After the term was ended the court lost its power over the decree, and under the guise of an amendment had no power to revise the decree or to correct a judicial mistake or any errors or irregularities in the sale under the original decree.

It follows that the court had no authority to render what purports to be the *nunc pro tunc* decree in the overdue tax case, and consequently the purchasers at the sale under it derived no title whatever.

The plaintiff also claims title because the land in controversy is wild and unimproved, and it and its predecessors in title has paid the taxes on the land for seven years in succession, three of which payments were made after the passage of the act of March 18, 1899, which is § 6943 of Crawford & Moses' Digest.

It is a sufficient answer to this contention to say that the plaintiff can only avail itself of the payment of taxes for the years 1899 to 1903 inclusive, which is only five years.   The reason is that the Legislature of 1893 granted the land in controversy to the Laconia Levee District and exempted it from State and county taxes for the term of five years from the passage of the act.   The act was approved April 14, 1893.   Acts of 1893, p. 308. Moreover, in *Robinson* v. *Indiana & Ark. Lbr. & Mfg. Co.*, 128 Ark. 550, it was held that land in the hands of a levee district is exempt from taxation for State and county purposes.

It thus appears from the record that the title to the land in question was in the Laconia Levee District during a part of the seven years relied upon by the plaintiff to obtain title to the land by the payment of taxes for seven years in succession, and the plaintiff acquired no title by the payment of taxes.

It follows that the decree will be affirmed.